AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

*Cussip Prad 1/18/22*

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A BLACK SAMSUNG CELL PHONE WITH SIM CARD NUMBER 89148000008683513778, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY PROPERTY ROOM

)
)
)
) Case No. M-23-23-STE
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the   Western   District of   Oklahoma  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 18 U.S.C. § 1952(a)(3) | Interstate Travel in Aid of Racketeering |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cristina Busbee*
Applicant's signature

CRISTINA BUSBEE, HSI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: **Jan 18, 2023**

*Shon T. Erwin*
Judge's signature

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK SAMSUNG CELL PHONE WITH SIM CARD NUMBER 8914800000008683513778, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY PROPERTY ROOM | Case No. M-23- 23  -STE |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Cristina Busbee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— one electronic device, as further described in Attachment A hereto—which is currently in law enforcement possession, and the extraction from this device of electronically stored information described in Attachment B.

2. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since April 2019. I am presently assigned to the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City).

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am

authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4.      I have been involved in a wide variety of investigative matters.  Among other things, I am responsible for conducting investigations into violations of federal criminal laws, including the unlawful possession of firearms, the manufacturing, possession, and distribution of controlled substances, and the amassing, spending, converting, transporting, distributing, laundering, and concealing of proceeds from criminal activity.  I have arrested, interviewed, and debriefed numerous individuals who have been involved with and have personal knowledge of these crimes.  I have testified in judicial proceedings concerning the prosecution for violations of laws related to these crimes.  I have been the affiant of numerous federal search warrants, which I have used to further criminal investigations.  I have received approximately 26 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched is a black Samsung cellphone with SIM card number 89148000008683513778, hereinafter referred to as "the Device," as further described in

Attachment A, hereto.  The Device is currently located in secure evidence storage at the Homeland Security Investigations office, 3625 NW 56th Street, Oklahoma City, OK 73112.

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     The Device was seized during a traffic stop involving Cruz Lisarraga FLORES and Tonya Michelle HUDELSON.  As described in more detail below, FLORES and HUDELSON are currently under investigation by HSI for violations of 21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 1952(a)(3) (interstate travel in aid of racketeering), and FLORES for 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

9.     On the morning of January 12, 2023, Oklahoma Highway Patrol (OHP) Trooper Jake Sawatzky conducted a traffic stop of a white Toyota Tacoma bearing California license plate 26667A2 for moving and equipment violations.  This traffic stop occurred near mile marker 92 on Interstate 40 in Caddo County, Oklahoma.  Trooper Sawatzky made a passenger side approach and encountered HUDELSON in the driver's seat, and FLORES in the front passenger seat.  Inside the vehicle, Trooper Sawatzky observed an open beer can at FLORES` feet.  Trooper Sawatzky requested HUDELSON join him in his patrol car while he prepared a courtesy warning.

10.    While Trooper Sawatzky prepared the warning, HUDELSON stated that she and FLORES, her ex-boyfriend, traveled to Tennessee to visit friends for a couple of days.  Trooper

Sawatzky asked HUDELSON if there was insurance and registration in the vehicle and HUDELSON said yes.

11.     Trooper Sawatzky returned to the Toyota Tacoma to obtain the vehicle's insurance and registration documents and noticed that FLORES displayed signs of high stress and anxiety. Trooper Sawatzky asked FLORES for the paperwork, and FLORES began to reach for the glove compartment but then pulled his hand back and said they did not have it. Trooper Sawatzky asked FLORES for his ID. While looking for his ID, FLORES stated they had been to Adamsville, Tennessee to visit a friend named Lindsay who was sick. Trooper Sawatzky noted that FLORES was clutching a dark green jacket, was profusely sweating despite the outside temperature of 44 degrees, and that his hands were trembling.

12.     Trooper Sawatzky then returned to his patrol car. HUDELSON stated that she and FLORES had gone to Adamsville to visit a mutual friend. HUDELSON said they were driving non-stop because she wanted to get home in time for her birthday and stated they had been on the road for a day and a half already. Trooper Sawatzky noted that the traffic stop location was approximately 9.5 hours from Adamsville, TN, which seemed to conflict with HUDELSON's timeline. Trooper Sawatzky asked HUDELSON if she is employed, and she said she was not but takes care of her grandson. HUDELSON indicated that FLORES is also unemployed.

13.     Trooper Sawatzky contacted dispatch to assist in conducting standard law enforcement checks. While waiting on returns, Trooper Sawatzky removed FLORES from the

4

Toyota Tacoma and deployed his Oklahoma CLEET[1] certified K9, "Stormy," for a free air sniff of the vehicle. Stormy gave a positive alert for the odor of narcotics emanating from the vehicle.

14. A probable cause search of the vehicle was conducted and resulted in the discovery of the following: an open baggie of a white crystalline-like substance on the passenger seat where FLORES had been sitting; an open beer can in the passenger side floorboard; a loaded Hi-Point 380 ACP firearm with a magazine containing four rounds of ammunition in the glove compartment; a Lorcin 22 caliber pistol (SN: B02418) in the center console; a digital scale with residue in the glove compartment; and various large bundles of United States currency in the green jacket FLORES had been clutching.

15. Record checks revealed that FLORES has an extensive criminal history in California and is a convicted felon.[2] As such, FLORES is prohibited from possessing a firearm. HUDELSON disclaimed the currency. FLORES claimed the currency and stated it was his life savings. Both FLORES and HUDELSON were detained and transported to the OHP Troop SO (Special Operations) office in Oklahoma City for interviews with HSI investigators. A K9 currency sniff was performed at Troop SO with a positive alert and indication for an odor of illegal drugs. The total currency seized was $28,000.

16. Both FLORES and HUDELSON refused to speak with investigators. FLORES admitted to being a methamphetamine user and had visible markings on his arms where he had

---

[1] Council on Law Enforcement Education and Training

[2] FLORES` felony convictions include possession of a stolen vehicle (2004), carjacking (2006), possession with intent to distribute methamphetamine (2012), and grand theft (2019).

injected himself.  FLORES was placed under arrest for state charges and transported to the Caddo County Jail for booking.  HUDELSON was released pending further investigation.

17.	The vehicle that HUDELSON was driving, which is owned by FLORES, contained a large battery charger that was emptied out, creating a compartment in the charger.  The charger was empty at the time, however, the screws on it showed signs of damage indicating that it had been manipulated.  Additionally, during a secondary search of the vehicle, Trooper Sawatzky found that the spare tire under the bed of the Toyota Tacoma was uneven, and the rim had shiny gouge marks on the metal.  The rim also had red axle grease on it, which is not typically used on tires.  In the vehicle's toolbox, Trooper Sawatzky located a homemade tool for lowering the spare tire.  Trooper Sawatzky removed the spare tire and found additional red axle grease and tampering on the other side of the wheel.  The rim was removed from the tire, and the same red grease was found on the inside of the tire.  These facts, along with the indicators of nervousness and hard-driving, are consistent with cross-country contraband smuggling.  Based on my training and experience, I believe FLORES and HUDELSON had traveled from California to Tennessee, likely with illegal drugs, and were returning to California with cash proceeds earned from their trip.

18.	Based on the aforementioned facts, there is probable cause to believe that FLORES and HUDELSON committed violations of 21 U.S.C. § 846 (drug conspiracy) and 18 U.S.C. § 1952(a)(3) (interstate travel in aid of racketeering), and FLORES committed violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

19.	The Device was located at FLORES` feet on the front passenger floorboard and was seized. It is currently located in secure evidence storage at the Homeland Security

Investigations office, 3625 NW 56th St., Oklahoma City, OK 73112. In my training and experience, I know that the Device has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the Device first came into the possession of investigators.

20. Based on my training, experience, and research, I know that the Device is a wireless telephone. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

21. From my training and experience, I know that possession of drugs with the intent to distribute are conspiratorial crimes. Individuals who engage in these crimes typically do so in groups with the assistance of others. These criminals often use their cell phones to communicate

7

with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone. Having access to the Device's contents may allow investigators to understand who organizes this drug trafficking, and whether FLORES and HUDELSON are involved in a wider conspiracy.

22. An examination can reveal the approximate location of the Device and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the Device's unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. Furthermore, I know that when an individual uses an electronic device, it can serve both as an instrumentality for committing the crime (such as contacting sources of drugs to

make arrangements for picking up drugs or dropping off payments, or vice versa), and also as a storage medium for evidence of the crime.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Cristina Busbee*
Cristina Busbee
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on January 18, 2023

10

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a black Samsung cellphone with SIM card number 89148000008683513778, hereinafter referred to as "the Device." The Device is currently located in secure evidence storage at the Homeland Security Investigations` property room.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**Black Samsung cellphone** with SIM Card Number 89148000008683513778:



**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 846 (drug conspiracy), 18 U.S.C. § 1952(a)(3) (interstate travel in aid of racketeering), and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) involving FLORES, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled or trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording FLORES's schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.